IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KELLY JO FLYNN,**                      Case No. 1:17 CV1818

    Plaintiff,                      Judge Solomon Oliver, Jr.

    v.                      Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                      REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Kelly Jo Flynn ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated August 30, 2017). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on January 25, 2015, alleging a disability onset date of September 30, 2014. (Tr. 209). Her claims were denied initially and upon reconsideration. (Tr. 127, 136). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 157). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 16, 2017. (Tr. 32-56). On April 25, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 11). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); *see* 20

C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on August 30, 2017. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background, Function Report, and Testimony

Plaintiff was born in September 1969 making her 45 years old on her alleged onset date and the date of her application. (Tr. 37). Plaintiff had a high school education. *Id*. She lived with her brother in his home, but he passed away just days prior to the ALJ hearing. *Id*. Eventually, Plaintiff planned to move in with a friend. (Tr. 38).

Plaintiff last worked as a mortgage loan processor approximately four years prior to the hearing. *Id*. She also previously worked as a telemarketer for the same company. (Tr. 39). She quit her job because "it was just so far", the "wear and tear on [the] car", and "just one thing after another". *Id*. Plaintiff testified she often made mistakes and it was difficult to "keep things straight in my head". (Tr. 40).

Plaintiff felt she was disabled because she is "not right" and required daily psychiatric medication. (Tr. 42, 254). She took her medication the morning of the hearing, and felt that "it absolutely helps". *Id*. Plaintiff reported minimal side effects. *Id*.

Plaintiff had a panic attack "once every couple months". (Tr. 43). She described the "worst one" she has ever had for the ALJ. *Id*. Plaintiff was at Jacob's Field with her husband when she became hot and sweaty, disoriented, and threw up. *Id*. She testified Wellbutrin helped control the panic attacks, but she still has them on occasion. (Tr. 44).

In a Function Report, Plaintiff said it was "very hard . . . to keep things straight in [her] head". *Id;* (Tr. 249-50). She was disorganized, had trouble comprehending instructions, could not

2

remember simple things, and "lacked common sense". (Tr. 45). Plaintiff testified she was "very blunt", but would not have trouble taking orders from a supervisor. (Tr. 46).

Plaintiff did not drive, and did not enjoy cooking or cleaning. (Tr. 46-47). She could not stand for long enough to cook due to back pain. (Tr. 249). Plaintiff cared for her two dogs. (Tr. 52, 248). Plaintiff testified most of her days were spent watching television or lying in bed. *Id.*

Relevant Medical History[1]

Monthly from October 2013 through October 2014, Plaintiff saw psychiatrist Erika Nathan, M.D., for medication monitoring. *See* Tr. 326-51. Dr. Nathan prescribed medication to treat attention deficit disorder/attention deficit hyperactivity disorder (ADD/ADHD), bipolar disorder, mood, disorder, and substance abuse. (Tr. 350). In October 2013, Plaintiff reported she was devastated by her mother's end-stage Alzheimer's disease. *Id.* She reported trouble sleeping, crying all the time, and using her sister's Xanax to help with the stress. *Id.* Dr. Nathan discussed therapy with Plaintiff, but she was resistant. *Id.* During this time period, Plaintiff had relatively normal mental status examination findings, although Plaintiff's mood was up and down on occasion. (Tr. 326-51). Dr. Nathan treated Plaintiff with Abilify, Adderall, Ambien, and Prozac, to which she reported no adverse side effects. (Tr. 326, 342, 344). In October, 2014, Dr. Nathan terminated Plaintiff's care after she failed to undergo bloodwork or a urine screening as required by the treatment contract. (Tr. 324).

---

1. Plaintiff alleged disability based on bipolar disorder with manic and depressive episodes, schizophrenia, and ADD/ADHD. (Tr. 197). There are both physical and mental health treatment records and opinion evidence in the record. However, in her brief, Plaintiff only challenges the ALJ's analysis of physicians who offered opinions on her *mental* limitations. Therefore, the undersigned only summarizes the medical records relevant to Plaintiff's mental impairments. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003)

Plaintiff was seen by a licensed social worker[2] at the Charak Center for Health and Wellness in November 2014. (Tr. 307-20). Plaintiff reported a previous diagnosis of bipolar disorder. (Tr. 307). During the assessment, her weaknesses were anxiety, focus struggles, depression, and mood swings. *Id*. Plaintiff's strengths were noted as a "good memory" and a "big heart". *Id*.

Three days later, Plaintiff underwent an initial psychiatric evaluation with physician's assistant, Pushpalatha Venkataraman, PA-C. (Tr. 298). Plaintiff reported a long history of mental impairment that was "well controlled" with medication. *Id*. Plaintiff had an anxious mood, but all other findings were normal. (Tr. 303-04). Ms. Venkataraman assigned a Global Assessment of Functioning ("GAF") score of 65[3]. (Tr. 305). Ms. Venkataraman diagnosed bipolar disorder and ADHD by history, and prescribed Abilify, Adderall, Prozac, and Ambien. (Tr. 304-05). In late November 2014, Plaintiff saw Charek Center psychiatrist Dr. Rakesh Ranjan. (Tr. 293-95). Dr. Ranjan found Plaintiff was doing "ok". (Tr. 293). Plaintiff had a depressed and anxious mood, but a cooperative demeanor. (Tr. 295). Dr. Ranjan increased Plaintiff's doses of Abilify and Prozac. (Tr. 296).

In December 2014, Plaintiff called the Beacon Health Line and reported she had been out of medication for one week and "desperately" needed a refill. (Tr. 477). Plaintiff saw Martha

---

2. The provider's signature is not legible, only that he/she is a "LSW". *See* Tr. 320. It appears as though this is an intake form for the center. *See id.*

3. The GAF scale represented a "clinician's judgment" of an individual's symptom severity or level of functioning. Am. Psych. Ass'n, *Diagnostic & Statistical Manual of Mental Disorders,* 32-33 (4th ed., Text Rev. 2000) ("DSM-IV-TR"). As set forth in the DSM-IV, a GAF score of 65 indicated "mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 32-34. The Sixth Circuit "take[s] a case by case approach to the value of GAF scores." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016).

Yeager, LSW, and Jenny Row, MSSA the same day. *Id*. Plaintiff was referred to Kathleen Christy, CNP, to follow-up on management of her prescription. (Tr. 484).

Plaintiff saw primary care physician David Parris, M.D., in February 2015. (Tr. 377). Plaintiff reported a history of depression and anxiety. (Tr. 378). On psychiatric exam, she had a normal mood and affect, as well as intact judgment and insight. (Tr. 379). Dr. Parris prescribed Xanax for anxiety. (Tr. 380).

Plaintiff saw Dr. Parris nine more times between February 2015 and January 2017. (Tr. 411, 552, 556, 560, 568, 573, 577, 589, 601, 612, 671). The visits focused primarily on back and foot pain management. *Id*. Dr. Parris repeatedly found Plaintiff had a normal mood and affect, with intact insight and judgment. *Id*. He continued Plaintiff on Xanax for her anxiety, which she reported helped control her symptoms. (Tr. 363, 366, 377, 409, 550, 554, 566, 571, 575, 587).

In April 2015, Plaintiff saw Cristina Canella, CNP, for a psychiatric evaluation and medication refill. (Tr. 397). Ms. Canella found Plaintiff did not have generalized anxiety disorder. *Id*. Plaintiff reported focus and concentration issues. *Id*. Plaintiff denied exacerbation in her mood other than increased irritability. *Id*. Examination revealed Plaintiff was cooperative with good eye contact, and had a bright affect. (Tr. 398). Ms. Canella assigned a GAF score of 60[4]. (Tr. 399). Ms. Canella diagnosed ADD, major depressive disorder, recurrent by history, and anxiety by history. *Id.*

Plaintiff returned to Ms. Canella in June 2015. (Tr. 430-31). Plaintiff reported her depression was manageable, and her overall mood was "pretty good". (Tr. 430). She was happy with her current medications. *Id.*

---

4. A GAF score of 60 represents "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 32-34.

In September 2015, Plaintiff asked Ms. Canella for an increase in her Adderall dosage, and became argumentative when Ms. Canella disagreed with her request. (Tr. 436). During an October 2015 visit, Plaintiff was argumentative and anxious. (Tr. 443). Ms. Canella was concerned Plaintiff was abusing her medication. *Id*. She failed to inform Ms. Canella at their initial meeting that she was prescribed Xanax by Dr. Parris. (Tr. 397). Plaintiff told Ms. Canella she could not provide her required drug screen because she "couldn't go". (Tr. 443). Plaintiff then cried and discussed her mother passing in 2014. *Id*. Plaintiff swore "I won't take Xanax anymore", and promised to flush them down the toilet. *Id*. Plaintiff then asked if Strattera was a narcotic or not. *Id*. Ms. Canella noted Plaintiff's judgment and insight were "poor". *Id*.

In November 2015, Plaintiff reported to Ms. Canella that her mood had improved. (Tr. 620). She denied depression, anxiety, or mood swings. *Id*.

In February 2016, Ms. Canella noted Plaintiff was very upset over the results of a drug screen that was positive for amphetamines, benzodiazepines, cocaine, and oxycodone. (Tr. 628, 662). Plaintiff was crying, screaming, and swore "on her mother's grave" that she did not do drugs. (Tr. 628). She accused the lab of "messing up". *Id*. Plaintiff was advised no prescriptions for controlled substances would be provided. *Id*.

In April 2016, Plaintiff underwent a psychological consultative examination with Rita Politzer, Ph.D. (Tr. 453-59). Plaintiff was described as agitated and disorganized. (Tr. 453). She cried as she enumerated her problems. *Id*. Plaintiff was cooperative throughout her examination, "but her loud and rambling speech made it difficult often to understand what she was saying". *Id*. Plaintiff reported visual and auditory hallucinations, extreme agitation and anxiety, emotional lability, echolalia, and paranoia. (Tr. 454). She noted people often avoided her. *Id*. Dr. Politzer diagnosed bipolar disorder, paranoid personality disorder, and assigned a GAF of 40. (Tr. 458).

6

Plaintiff saw a counselor, Lyndsey Murphy, in May 2016. (Tr. 487). Plaintiff's treatment goals were focused on learning how to cope with anxiety, panic attacks, depressive symptoms, and ADHD. *Id*. Plaintiff reported that she "couldn't focus" and was "bouncing off walls". *Id*. She was upset that Ms. Canella would not refill her ADHD medications and stated "if she doesn't get it she will go somewhere else". (Tr. 487). Plaintiff repeated her frustrations about not getting medication for ADHD, but stated her bipolar symptoms were well managed. (Tr. 487).

In May 2016, Plaintiff saw Jeffrey Turell, M.D., for a psychiatric evaluation. (Tr. 489). He diagnosed ADHD, bipolar disorder, and panic disorder. (Tr. 491). Dr. Turell noted Plaintiff was "stable", well-groomed, had a full affect, and was cooperative. (Tr. 490-91). He found Plaintiff had a circumstantial and concrete thought process. (Tr. 490). Plaintiff requested an Adderall adjustment for concentration issues. (Tr. 491-92).

Plaintiff saw Dr. Turell monthly from May to November 2016. *See* Tr. 489-536. He treated Plaintiff with Prozac, Abilify, and Wellbutrin. *Id*. He consistently found Plaintiff had normal mental status examination findings. *Id*. He prescribed Adderall in June of 2016 when Plaintiff got a new job, which she was "very excited" about. (522-23). In September 2016, Plaintiff reported "everything [was] going really good", and she attended a few counseling sessions. (Tr. 508). In October 2016, Plaintiff reported she worked 30 hours per week, and "everything's going really good". (Tr. 503). She reported the Adderall helped improve her concentration. (Tr. 503).

From May through August 2016, Plaintiff attended five therapy sessions with social worker Elisa Ruff, LCSW. *See* Tr. 641, 645, 649, 653-54. Ms. Ruff consistently noted Plaintiff was cooperative, friendly, and had an appropriate affect. *See id*. On one occasion, she noted Plaintiff "appear[ed] chemically altered". (Tr. 653).

<u>Opinion Evidence</u>

*Treating Sources*

*Ms. Canella, CNP*

In June 2015, Ms. Canella completed a *Mental Capacity Assessment* form. (Tr. 402-04). Plaintiff's diagnoses were dysthymia, attention deficit disorder, anxiety disorder, and opioid abuse in full remission. (Tr. 402). Ms. Canella found Plaintiff had either no limitation or a "slight"[5] limitation in all nineteen itemized categories which were grouped in the areas of understanding and memory; sustain concentration and persistence; social interaction; and adaptation. (Tr. 402-04). Ms. Canella opined Plaintiff would be absent from work two days per month. (Tr. 403).

*Ms. Christy, APRN* [6]

In January 2015, Ms. Christy completed a *Mental Capacity Assessment* form. (Tr. 355-57). Ms. Christy found Plaintiff "extremely limited"[7] in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with others; complete a normal workday without interruption from psychological symptoms; get along with coworkers; use public transportation; set goals; or make plans independently of others. *Id*. Ms. Christy found Plaintiff "markedly limited"[8] in her ability to make simple work-related decisions; perform at a consistent pace with rest periods; interact with the public; maintain socially appropriate behavior and adhere to basic neatness and cleanliness

---

5. A "slight" limitation was defined as: "some mild limitation in this area, but the individual can generally function satisfactorily." (Tr. 402).

6. The record contains no treatment notes from Ms. Christy.

7. An "extreme" limitation was defined as a "major limitation" with "no useful ability to function in this area. (Tr. 355).

8. A "marked" limitation was described as a "serious limitation" where "the individual cannot generally perform satisfactorily in this area." (Tr. 355).

standards; and maintain awareness of normal hazards. *Id*. Ms. Christy found Plaintiff "moderately"[9] or "slightly" limited in her ability to remember locations; understand, remember, and carry out simple instructions; perform on a schedule; ask simple questions; and sustain activity without special supervision. *Id*. She opined Plaintiff would be absent from work four or more days per month. (Tr. 356).

*Examining Physicians*

*Dr. Politzer*

Dr. Politzer completed a *Mental Functional Capacity Assessment* in April 2016. (Tr. 452). She found Plaintiff was moderately limited in her ability to remember and carry out very short instructions; remember locations; perform activities on a schedule; interact with the general public; or ask simple questions. *Id*. Dr. Politzer found Plaintiff markedly limited in her ability to understand, remember, and carry out detailed instructions; maintain attention; sustain ordinary routines; complete a normal workday without interruption from psychological symptoms; accept criticism from supervisors; get along with coworkers; adhere to standards of cleanliness; respond to changes in the work setting; travel to unfamiliar places; set goals; or maintain awareness of workplace hazards. *Id*. Dr. Politzer opined Plaintiff was unemployable. *Id*.

Dr. Politzer also completed a *Functional Assessment*. (Tr. 458-59). She opined Plaintiff had deficiencies in short and long term memory, and instructions needed to be repeated often. (Tr. 458). She found Plaintiff appeared to be functioning in below or even borderline ranges intellectually, however, these issues seemed more likely to be developmental rather than resulting

---

9. A "moderate" limitation was described as on where "the individual will have intermittent difficulty performing in this area. . . [they] can generally perform satisfactorily in this area but not always." (Tr. 355).

from mental health disorders. *Id*. Her mental health issues may have impaired functioning even further. *Id*. Plaintiff had severe impairments in concentration. (Tr. 459).

*Reviewing Physicians*

*Dr. Souder*

In July 2015, State agency psychological consultant Janet Souder, Psy.D, found Plaintiff had "severe" impairments of affective disorder, attention deficit disorder/ attention deficit hyperactivity disorder, and substance addiction disorder. (Tr. 66). She found Plaintiff's impairments resulted in mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning, concentration, and persistence. (Tr. 67). She found no episodes of extended duration decompensation. *Id*. Dr. Souder opined Plaintiff had the ability to complete one to three step simple instructions in a low-stress work environment without production quotas. (Tr. 69-70). Plaintiff needed to avoid frequent interaction with the general public "due to her moodiness". (Tr. 70). Dr. Souder observed the level of impairment reported by Plaintiff was not supported by office visit notes and evaluations by "several treating [mental health] sources". (Tr. 70). Dr. Souder also found Ms. Christy's opinion to be unsubstantiated by the objective medical evidence of record. (Tr. 68, 71).

*Dr. Jenkins*

In November 2015, State agency psychological consultant Connie Jenkins, M.D., affirmed Dr. Souder's, adding that Plaintiff should avoid frequent interaction with the public, but could tolerate "occasional, superficial interactions with others". (Tr. 115, 117-19).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 53-55. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was

physically and mentally limited in the way the ALJ determined Plaintiff was. (Tr. 54). The VE opined such an individual could not perform Plaintiff's past work, but could perform other jobs such as a dishwasher, janitor, or groundskeeper. *Id*.

Further, the ALJ asked the VE to consider the same hypothetical person, with the added limitation that they be off task twenty percent of the day, and absent two times per month on an ongoing basis. (Tr. 54-55). The VE opined such an individual would not be able to perform Plaintiff's past work, or any other work in the national economy. *Id*.

ALJ Decision

In a decision dated April 25, 2017, the ALJ first concluded Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 16). He found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. *Id*. The ALJ found Plaintiff had severe impairments of bipolar disorder, ADD/ADHD, and substance addiction disorder. (Tr. 17). None of these impairments – individually or in combination – met or medically equaled a listed impairment. *Id*. Next, the ALJ concluded:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple, routine tasks in a setting with occasional changes. She can perform goal-oriented work but cannot work at a production rate pace. She can occasionally interact with supervisors, coworkers, and the public if that interaction is limited to speaking and signaling as it is defined in the *Selected Characteristics of Occupations* (SCO).

(Tr. 19) (emphasis in original). Further, the ALJ found Plaintiff unable to perform any past relevant work. (Tr. 24). The ALJ found Plaintiff was 45 years old, had a high-school education, and was able to communicate in English. *Id*. Relying on testimony from the VE, the ALJ concluded Plaintiff could perform jobs that exist in significant numbers in the national economy such as a dishwasher,

janitor, or groundskeeper. (Tr. 25-26). Therefore, the ALJ concluded Plaintiff was not disabled. (Tr. 26).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred when he failed to properly evaluate the opinions of Ms. Canella, Dr. Politzer, Dr. Souder, and Dr. Jenkins. Plaintiff asserts these opinions were rejected without good reason. The Commissioner responds that the ALJ's decision is supported by substantial evidence. For the reasons set forth below, the undersigned finds the ALJ's opinion supported by substantial evidence, and recommends the decision of the Commissioner be affirmed.

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers,* 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010).

When determining weight and articulating "good reasons", the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Importantly, the regulations also provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(c) and 416.927(c). As to non-treating medical sources, the regulations require ALJs to weigh their opinions "based on the examining relationship, (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c)) and 416.927(c). Although the ALJ need not provided "good reasons" for the weight assigned to non-treating source opinion, the findings made must still be supported by substantial evidence.

*Ms. Canella, CNP*[10]

Plaintiff asserts the ALJ failed to address Ms. Canella's opinion that she would likely be absent from work two days per month, emphasizing that this limitation is highly relevant to the RFC. (Doc. 15, at 17). The Commissioner responds that the ALJ's decision is supported by substantial evidence. The undersigned agrees with the Commissioner, and finds the ALJ's decision with regard to Ms. Canella is supported by substantial evidence and should therefore be affirmed.

In his analysis, the ALJ summarized Ms. Canella's opinion and the reasons for the weight assigned:

> The undersigned assigned partial weight to this treating source opinion. Greater weight was assigned to the diagnosis of ADD because it is supported in the preponderance of the evidence as well as the claimant's own testimony. Little weight was assigned to the none to slight limitations because the totality of the evidence supports moderate limitations in understanding, remembering, and applying information, interacting with others, concentration, persistence or maintaining pace, and in adapting or managing oneself. These moderate limitations support the non-exertional limitations outline in Finding No. 5 above.

---

10. Although recent revisions to the CFR have changed the rules regarding the definition of an "acceptable medical source", such as a nurse practitioner, such changes were effective March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819.

(Tr. 22).

Here, the ALJ gave reasons for assigning partial weight to the opinion of Ms. Canella, and points to evidence in the record for support. *Id*. The ALJ found "the totality of the evidence" supports his conclusion, and the "moderate limitations" he found support the non-exertional limitations in the RFC. *Id*. As noted above, the regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(c) and 416.927(b). As to non-treating medical sources, the regulations require ALJs to weigh their opinions "based on the examining relationship, (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)).

The evidence of record shows Ms. Canella consistently made normal mental status findings at her initial and follow-up visits with Plaintiff. (Tr. 397-99) (Plaintiff was alert, oriented, "friendly [and] cooperative", and had "good eye contact". Plaintiff said "I'm good sweetheart"); (Tr. 430) (Plaintiff reported "the depression . . . is manageable and . . . most of the time she can ignore it."). Other providers also noted normal mental status exams and effective symptom management with medication. (Tr. 293) (Plaintiff reported doing "OK" to Dr. Ranjan, and was otherwise "normal" and "cooperative"); (Tr. 326) (Dr. Nathan found Plaintiff "is normal". Plaintiff reported her mood was "good" and "anxiety is under good control"); (Tr. 409) (Dr. Parris noted Plaintiff felt alprazolam was "really helping"). The ALJ ultimately assigned "little weight" to these opinions and found Plaintiff had more moderate limitations than Ms. Canella opined in certain areas of functioning when he compared her findings with the record as a whole. (Tr. 22).

The ALJ ultimately did not include the two day work limit in his RFC as opined by Ms. Canella. The form Ms. Canella filled out asked for an *estimate* regarding "how many absences

16

would this patient likely have in an average month." (Tr. 403). Ms. Canella checked the box marked "2". *Id.* The ALJ implicitly rejected such a severe limitation by demonstrating the above listed medical evidence of record fails to support such an estimate. *See Saulic v. Colvin*, 2013 WL 5234243 at *10 (N.D. Ohio) ("Here, the ALJ evaluated the medical evidence and hearing testimony, and provided sufficient explanation for his implicit rejection of Dr. Dankoff's opinion regarding Saulic's expected work absences."); *see also Wagers v. Comm'r of Soc. Sec*., 2016 WL 4211811 at *7 (S.D. Ohio) ("Based upon the record as a whole, including the lack of evidence to support such a high rate of absenteeism . . . the ALJ's failure to discuss that portion of the opinions . . . was, at most, harmless error."). Ms. Canella's consistently normal findings, as well as other evidence in the record, contradict her assessment that Plaintiff would be absent from work two days per month.

Further, it is important to note the ALJ did not find Plaintiff had *no* limitations in her ability to function in the workplace. In fact, he found Plaintiff *more* limited than Ms. Canella opined in the areas of understanding, remembering, and applying information, interacting with others, concentration, persistence or maintaining pace, and in adapting or managing oneself. *See* Tr. 22. Ultimately, in implicitly rejecting Ms. Canella's opinion regarding absenteeism, the ALJ found Plaintiff's restrictions on the ability to maintain gainful employment were less substantial than Ms. Canella opined. And, although Plaintiff can point to evidence suggesting a contrary conclusion, this Court must affirm even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones,* 336 F.3d at 477. The ALJ's evaluation of the medical records provides substantial evidence to support his determination regarding Ms. Canella's opinion. Thus, the

17

undersigned recommends the court find the ALJ's analysis of Ms. Canella's opinion supported by substantial evidence and affirm.

*Dr. Politzer*

Next, Plaintiff argues the ALJ's reason for discounting the opinion of examining physician, Dr. Politzer is not supported by the record. (Doc. 15, at 19). The Commissioner argues the ALJ's assessment of Dr. Politzer's opinion is supported by substantial evidence. For the reasons outlined below, the undersigned agrees with the Commissioner, and recommends the ALJ's decision be affirmed in this regard.

As an initial matter, an examining, but not treating, source is one who has examined Plaintiff, but did not have an ongoing treatment relationship. 20 C.F.R. §§ 404.1527 and 404.1502; 20 C.F.R. §§ 416.927(b) and 416.902; SSR 96-2, 1996 WL 374188, at *1. This includes State agency physicians whose opinions must be considered by the ALJ. *Id*. Here, Dr. Politzer examined Plaintiff on one occasion, April 27, 2016, for a psychological assessment. (Tr. 453). The ALJ is required to weigh the opinion of agency examining physicians under the same factors as treating physicians, including the supportability and consistency of those opinions. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Although the explanatory requirement "does not apply to opinions from physicians who . . . have examined but not treated a claimant, the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011). Thus the question is not one of "good reasons", but rather whether the ALJ's reasoning in this regard is supported by substantial evidence. As discussed below, the undersigned concludes that it is.

Here, the ALJ summarized Dr. Politzer's opinion and gave reasons for the weight he assigned:

18

> Dr. Politzer completed a Mental Functional Capacity Assessment and found the claimant had moderate to marked limitations in understanding and memory, sustained concentration and persistence and in social interaction. She had marked limitations in adaptation. The undersigned assigned little weight to this opinion because it is not supported by the preponderance of the evidence. The limitations are based on the claimant's subjective complaints and not objective findings. The record does not support the marked limitations because the record only supports moderate limitations.

(Tr. 23).

Here, the ALJ recognized Dr. Polizer based many of his findings on Plaintiff's subjective complaints and self-reported history. Much of Dr. Polizer's assessment is a rendition of Plaintiff's self-reported social, behavioral, and employment history, as well as her activities of daily living. (Tr. 453-54). Regarding Plaintiff's social limitations, Dr. Polizer found she "has a history of poor relationships with supervisors and coworkers who "tried to get [her] fired". (Tr. 459). Plaintiff "admits she has no skills to reduce stress and pressure to keep up and adapt in new situations". *Id*. These notations clearly indicate Dr. Polizer relied on Plaintiff's statements when arriving at his functional assessment. An ALJ is not required to accept a physician's opinion based solely on a claimant's self-reported symptoms. *See* 20 C.F.R. §§ 416.927(b) and 404.1527(b). *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014); *Bell v. Barnhart*, 148 F. App'x 227, 285 (6th Cir. 2005) (declining to give weight to a doctor's opinion supported only by the claimant's self-reported symptoms).

In sum, the undersigned finds the ALJ's decision and the weight he assigned to Dr. Polizer's opinion is supported by substantial evidence. Therefore, the undersigned recommends the decision be affirmed in this regard.

### *Drs. Souder and Jenkins*

Finally, Plaintiff argues the ALJ erred in assigning "great weight" to the opinions of State agency reviewing physicians Drs. Souder and Jenkins because their opinions were contradicted by

19

the opinions of Dr. Politzer and Ms. Canella. (Doc. 15, at 19). The undersigned finds the ALJ's

analysis of these opinions is supported by substantial evidence and should be affirmed.

"[T]he opinions of non-examining state agency medical consultants have some value and

can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832

F.Supp. 2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner views such medical

sources "as highly qualified physicians and psychologists who are experts in the evaluation of the

medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(c), (d); SSR

96–6p, 1996 WL 374180, at *2–3. "Consequently, opinions of one-time examining physicians and

record-reviewing physicians are weighed under the same factors as treating physicians including

supportability, consistency, and specialization." *Douglas,* 832 F.Supp. 2d at 823-24.

The ALJ addressed the opinions of Drs. Souder and Jenkins, and gave reasons for the

weight assigned:

> The undersigned gave great weight to the State Agency opinion regarding the
> claimant's non-exertional limitations because they are well supported with specific
> references to medical evidence. The opinions are internally consistent as well as
> consistent with the evidence as a whole. As there is no objective evidence
> contradicting these findings, the opinions are entitled to substantial weight.

(Tr. 24).

Here, the ALJ provided clear, supported reasons for assigning substantial weight to the

State agency psychologists. The ALJ emphasized the opinions are internally consistent, and the

overall record evidence speaks to the supportability and consistency of the limitations assigned.

*Id*. For example, Drs. Souder and Jenkins found Plaintiff moderately limited in her ability to

interact appropriately with the general public, and complete a normal workday without

psychological symptoms. (Tr. 69-70, 117-18). Dr. Jenkins found Plaintiff's allegations "not fully

credible" when comparing the location, duration, frequency, and intensity of her symptoms. (Tr.

116). Similarly, Dr. Souder found Plaintiff's symptoms unsupported by treatment notes and evaluations by "several" treating mental health sources. (Tr. 70). This is consistent with the findings of Dr. Turell who noted Plaintiff was "stable", well groomed, had a full affect, and was cooperative. (Tr. 490-91). Further, Dr. Turell's monthly treatment notes from May to November 2016 consistently showed normal mental status examination findings. *See* Tr. 489-536. Additionally, Dr. Parris's notes from February 2015 through January 2017 repeatedly show Plaintiff had a normal mood and affect, with intact insight and judgment. (Tr. 411, 552, 556, 560, 568, 573, 577, 589, 601, 612, 671). An ALJ opinion which addresses the supportability and consistency of a medical opinion with the record as a whole is sufficient. *See Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (addressing an opinion's supportability and consistency with the record as a whole is sufficient).

Further, to the extent Plaintiff argues these opinions were due less weight because they were inconsistent with those of Ms. Canella and Dr. Politzer, as described above the ALJ provided substantial evidence in support of his decision to discount those opinions. As noted above, the evidence of record shows Ms. Canella consistently made normal mental status findings at her initial and follow-up visits with Plaintiff. (Tr. 397-99) (Plaintiff was alert, oriented, "friendly [and] cooperative", and had "good eye contact". Plaintiff said "I'm good sweetheart"). As to Dr. Polizer, his assessment is largely a rendition of Plaintiff's self-reported social, behavioral, and employment history, as well as her activities of daily living. (Tr. 453-54). These findings are consistent with those of Dr. Souder who found Plaintiff's symptoms unsupported by treatment notes and evaluations by "several" treating mental health sources (Tr. 70); and Dr. Jenkins found Plaintiff only moderately limited in her ability to interact appropriately with the general public, and complete a normal workday without psychological symptoms. (Tr. 117-18).

In sum, the ALJ's evaluation of the opinions of Drs. Souder and Jenkins is supported by substantial evidence, and the undersigned recommends the decision be affirmed in this regard.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.


 s/James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).